EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Yanitsia Irizarry Méndez, como candidata a la alcaldía del Municipio de Aguadilla por el Partido Nuevo Progresista

Recurrida

v.

Julio Roldán Concepción, alcalde electo del Municipio de Aguadilla por el Partido Popular Democrático, Eliezer Ríos Santiago, candidato a la alcaldía de Aguadilla por el Partido Independentista Puertorriqueño, Juan Carlos Rosario Soto, candidato independiente a la alcaldía de Aguadilla; Comisión Estatal de Elecciones a través de su Presidente, Hon. Francisco Rosado Colomer; Roberto Iván Aponte Berríos, como Comisionado Electoral del Partido Independentista Puertorriqueño; Olvin A. Valentín, como Comisionado Electoral del Movimiento Victoria Ciudadana; Gerardo A. Cruz Maldonado, como Comisionado Electoral del Partido Popular Democrático; Juan Frontera Suau, como Comisionado Electoral del Proyecto Dignidad; Héctor J. Sánchez Álvarez, como Comisionado Electoral del Partido Nuevo Progresista.

Legisladores municipales Partido Nuevo Progresista:
Mery Merci Ramos Arce, Ramses (Chay) Martir Emmanuelli, Damaris Salcedo Peña, Davis González Pumarejo, Ángel Luis Rodríguez Rosa, Ernesto Robledo Arce, Héctor Rosa Martínez, Aurea Meaux Rivera, Ángel Manuel Montero Pellot, Alberto Luis Torres Torres, David Morales Feliciano, Lenitzia Lugo Sein

Legisladores Municipales Partido Popular Democrático:
Kenneth Sanabria Domenech; Mayra M. Rosa Sifre, Edwin Lemuel Orfila Soto, Lisandra Badillo Sosa, Julissa Gerena Medina, Wilfred Yasel Torres Rosado, Ángel Pérez (Mr. Pérez), Héctor Alberto Villanueva Ruiz,

Certiorari

2021 TSPR 23

206 DPR _____

Joselito Jiménez Rodríguez, Ángel Luis Nieves Vargas, Ana Chely Almeyda Álvarez, Jorge Luis Pérez Salas, Ivette D. Fantauzzi Feliu

Legislador Movimiento Victoria Ciudadana: Edwin J. Cornier Colón

Legisladores Municipales Partido Independentista Puertorriqueño: Deyhaneira Nieves Chaves, Elizabeth Águila Díaz, Héctor Manuel Rivera Viera, Diego Alejandro Marcial Águila, Luis Fernando Martínez Torres, Barry Elbert Babilonia, Michelle Alers Méndez, Osvaldo Nieves Vélez, Héctor E. Águila García, Lilia M. Otero Rodríguez, Ariel Morell Echevarría, Miguel Esteban Nieves Chaves, Ana Lydia Blas Rosado

John Doe, elector del Precinto 035 que pudiera verse adversamente afectado

Peticionarios

Número del Caso: CC-2021-130

Fecha: 26 de febrero de 2021

Tribunal de Apelaciones:

Panel VII

Abogados de la parte peticionaria:

Lcdo. Pedro E. Ortiz Álvarez
Lcdo. Humberto Xavier Berríos Ortiz
Lcdo. Hilton García Aguirre

Abogada de la parte recurrida:

Lcda. Raquel E. Torres Reyes

Materia: Resolución del Tribunal con Votos Particulares Disidentes.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Yanitsia Irizarry Méndez, como candidata a la alcaldía del Municipio de Aguadilla por el Partido Nuevo Progresista<br><br>Recurrida<br><br>v.<br><br>Julio Roldán Concepción, alcalde electo del Municipio de Aguadilla por el Partido Popular Democrático, Eliezer Ríos Santiago, candidato a la alcaldía de Aguadilla por el Partido Independentista Puertorriqueño, Juan Carlos Rosario Soto, candidato independiente a la alcaldía de Aguadilla; Comisión Estatal de Elecciones a través de su Presidente, Hon. Francisco Rosado Colomer; Roberto Iván Aponte Berríos, como Comisionado Electoral del Partido Independentista Puertorriqueño; Olvin A. Valentín, como Comisionado Electoral del Movimiento Victoria Ciudadana; Gerardo A. Cruz Maldonado, como Comisionado Electoral del Partido Popular Democrático; Juan Frontera Suau, como Comisionado Electoral del Proyecto Dignidad; Héctor J. Sánchez Álvarez, como Comisionado Electoral del Partido Nuevo Progresista.<br><br>Legisladores municipales Partido Nuevo Progresista:<br>Mery Merci Ramos Arce, Ramses (Chay) Martir Emmanuelli, Damaris Salcedo Peña, Davis González Pumarejo, Ángel Luis Rodríguez Rosa, Ernesto Robledo Arce, Héctor Rosa Martínez, Aurea Meaux Rivera, Ángel Manuel Montero Pellot, Alberto Luis Torres Torres, David Morales Feliciano, Lenitzia Lugo Sein<br><br>Legisladores Municipales Partido Popular Democrático:<br>Kenneth Sanabria Domenech; Mayra | CC-2021-130 | *Certiorari* |

M. Rosa Sifre, Edwin Lemuel Orfila Soto, Lisandra Badillo Sosa, Julissa Gerena Medina, Wilfred Yasel Torres Rosado, Ángel Pérez (Mr. Pérez), Héctor Alberto Villanueva Ruiz, Joselito Jiménez Rodríguez, Ángel Luis Nieves Vargas, Ana Chely Almeyda Álvarez, Jorge Luis Pérez Salas, Ivette D. Fantauzzi Feliu

Legislador Movimiento Victoria Ciudadana: Edwin J. Cornier Colón

Legisladores Municipales Partido Independentista Puertorriqueño: Deyhaneira Nieves Chaves, Elizabeth Águila Díaz, Héctor Manuel Rivera Viera, Diego Alejandro Marcial Águila, Luis Fernando Martínez Torres, Barry Elbert Babilonia, Michelle Alers Méndez, Osvaldo Nieves Vélez, Héctor E. Águila García, Lilia M. Otero Rodríguez, Ariel Morell Echevarría, Miguel Esteban Nieves Chaves, Ana Lydia Blas Rosado

John Doe, elector del Precinto 035 que pudiera verse adversamente afectado

Peticionarios

## RESOLUCIÓN

En San Juan, Puerto Rico, a 26 de febrero de 2021.

Examinado el recurso de *certiorari* y la *Moción en Auxilio de Jurisdicción al Amparo de la Regla 28 del Reglamento*, presentadas por la parte peticionaria, así como la *Oposición a moción en auxilio de jurisdicción*, presentada por la parte recurrida, se provee *no ha lugar* al recurso de *certiorari* y a la *Moción en Auxilio de Jurisdicción al Amparo de la Regla 28 del Reglamento*.

**Notifíquese de inmediato telefónicamente y por correo electrónico.**

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Presidenta Oronoz Rodríguez emite un Voto particular disidente. El Juez Asociado señor Estrella Martínez disiente y emite la expresión siguiente:

> Desde el pasado año, mediante una expresión disidente plasmada en la

resolución del caso <u>Yanitsia Irrizarry Méndez v. Comisión Estatal de Elecciones y otros</u>, CC-2020-0682 resuelto el 31 de diciembre de 2020, advertí en cuanto a la necesidad de determinar la validez de los votos en controversia en la candidatura a la alcaldía del Municipio de Aguadilla. Particularmente, porque le imprimía certeza y mayor agilidad al proceso. No obstante, en aquel entonces, este Tribunal declinó ejercer su rol de pautar el derecho aplicable y, hoy, casi cuatro (4) meses más tarde de haberse celebrado las elecciones generales, aún nos encontramos ante la misma encrucijada.

En esta ocasión, debimos paralizar el recuento y expedir el recurso para pautar de forma definitiva una guía que ilustre al foro administrativo y, eventualmente, a los foros inferiores, cosa que no ocurrió en el pasado. Sin embargo, hoy este Tribunal comete el mismo error dado que mañana se celebrará un recuento que carecerá de certeza jurídica debido a la ausencia de un dictamen final y firme por parte de este Foro.

Por el contrario, ese recuento dará base a que la parte perdidosa tenga que comenzar el calvario procesal de impugnar una nueva certificación. Lo anterior, a la luz del lamentable precedente ocurrido en el caso de la impugnación de la alcaldía de Guánica, en el cual tampoco hay una adjudicación final y firme en torno al ganador de la elección.

En ese sentido, no puedo avalar el curso de acción tomado por una Mayoría de este Tribunal. En su lugar, paralizaría el recuento y expediría el recurso para adjudicar la controversia de la validez de los votos. De este modo, conoceríamos de antemano la necesidad o no de la realización del recuento que hoy tácitamente se avala.

En torno a los méritos del recurso que hoy se deniega, considero que la Sentencia emitida por el Tribunal de Apelaciones va a producir un alto grado de confusión y falta de claridad en el recuento que se celebrará mañana, máxime ante las deficiencias administrativas, la improvisación y las circunstancias que han rodeado esta elección general. Adelanto,

que durante el recuento aflorarán legítimas interrogantes ante la posible anulación de votos mixtos válidos. Esa necesidad de contextualización y varios hechos de conocimiento público, requieren que no se aplique en el vacío una norma aislada del Código Electoral. Esta controversia no es tan sencilla ni se reduce a que en el pasado el llamado popularmente voto "pivazo" fue validado y que en el presente el Código Electoral lo prohíbe. En lo que atañe a este ciclo electoral 2020, tenemos que contextualizar las circunstancias que enmarcaron el ejercicio del derecho de los votos emitidos y aquí cuestionados.

Entre las múltiples deficiencias de la institucionalidad de la Comisión Estatal de Elecciones (CEE), resalta que las máquinas de escrutinio electrónico no fueron programadas conforme al Código Electoral vigente, en lo que atañe al rechazo del voto popularmente llamado "pivazo". No menos importante, existió un acuerdo unánime de administrar el proceso electoral bajo ese entendido. En ese sentido, la verdadera y difícil controversia en este caso realmente consiste en aquilatar si debe aplicarse aisladamente el articulado que prohíbe determinado tipo de voto, a pesar de que las máquinas de escrutinio electrónico se mantuvieron programadas para reconocer el tipo de voto prohibido por el Tribunal de Apelaciones y de que la CEE administró el proceso de una forma en la que le representó al elector que esa modalidad de voto mixto iba a ser contabilizada. Ciertamente, deben producirse consecuencias jurídicas, pero ¿a costa del derecho de los electores que emitieron un voto bajo el entendido de que era válido? A mi juicio, no y mucho menos posponiendo la contestación a esa importante interrogante en una etapa ulterior al recuento que se celebrará mañana. Ante ese cuadro, respetuosamente disiento.

El Juez Asociado señor Colón Pérez emite un Voto Particular Disidente. El Juez Asociado señor Kolthoff Caraballo está inhibido.

José Ignacio Campos Pérez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Yanitsia Irizarry Méndez como candidata a la alcaldía del Municipio de Aguadilla por el Partido Nuevo Progresista<br><br>Peticionaria<br><br>v.<br><br>Julio Roldán Concepción, alcalde electo del Municipio de Aguadilla por el Partido Popular Democrático, Eliezer Ríos Santiago, candidato a la alcaldía de Aguadilla por el Partido Independentista Puertorriqueño, Juan Carlos Rosario Soto candidato independiente a la alcaldía de Aguadilla, Comisión Estatal de Elecciones a través de su Presidente, Hon. Francisco Rosado Colomer; Roberto Iván Aponte Berríos, como Comisionado Electoral del Partido Independentista Puertorriqueño; Olvin A. Valentín, como Comisionado Electoral del Movimiento Victoria Ciudadana; Gerardo A. Cruz Maldonado, como Comisionado Electoral del Partido Popular Democrático; Juan Frontera Suau, como | CC-2021-0130 | *Certiorari* |

Comisionado Electoral del Proyecto Dignidad; Héctor J. Sánchez Álvarez, Comisionado Electoral del Partido Nuevo Progresista; Legisladores Municipales Partido Nuevo Progresista: Mery Merci Ramos Arce, Ramses (Chay) Martir Emanuelli, Damaris Salcedo Peña, Davis González Pumarejo, Ángel Luis Rodríguez Rosa, Ernesto Robledo Arce, Héctor Rosa Martínez, Aurea Meaux Rivera, Ángel Manuel Montero Pellot, Alberto Luis Torres Torres, David Morales Feliciano, Lenitzia Lugo Sein

Legisladores Municipales

Partido Popular Democrático: Kenneth Sanabria Domenech, Mayra M. Rosa Sifre, Edwin Lemuel Orfila Soto, Lisandra Badillo Sosa, Julissa Gerena Medina, Wilfred Yasel Torres Rosado, Ángel Pérez (Mr. Pérez), Héctor Alberto Villanueva Ruiz, Joselito Jiménez Rodríguez, Ángel Luis Nieves Vargas, Ana Chely Almeyda Álvarez, Jorge Luis Pérez Salas, Ivete D. Fantauzzi Feliu, Legislador Movimiento Victoria Ciudadana: Edwin J.

Cornier         Colón,
Legisladores
Municipales    Partido
Independentista
Puertorriqueño:
Deyhaneira     Nieves
Cíaves,       Elizabeth
Águila  Díaz,   Héctor
Manuel  Rivera  Viera,
Diego Alejandro Marcial
Águila,  Luis  Fernando
Martínez Torres,  Barry
Elbert       Babilonia,
Michelle Alers  Méndez,
Osvaldo  Nieves  Vélez,
Héctor   E.     Águila
García, Lilia M. Otero
Rodríguez, Ariel Morell
Echevarría,     Miguel
Esteban Nieves Chaves,
Ana Lydia Blas Rosado,
John  Doe,  Elector  del
Precinto    035     que
pudiera          verse
adversamente afectado

Recurridos

La Jueza Presidenta ORONOZ RODRIGUEZ emitió un Voto particular disidente.

En San Juan, Puerto Rico, a 26 de febrero de 2021.

Disiento del proceder de una Mayoría de este Tribunal. Este foro debió proteger la intención de todos los electores que emitieron válidamente su voto en las elecciones generales del 3 de noviembre de 2020. Al no hacerlo, ha dado paso a la invalidación de miles de votos de electores que confiaron en que su prerrogativa electoral -de rango constitucional- se respetaría en línea con su intención inequívoca. Tal proceder avala que un panel del Tribunal de

Apelaciones cambie las reglas del juego después de celebrados los comicios. Ello tiene un efecto nefasto dual. Primero, se crean reglas a la medida para adjudicar el voto en la contienda electoral del municipio de Aguadilla. Segundo, se adjudican votos de manera desigual a la que se hizo en los demás municipios y a la que se hizo en la papeleta de la gobernación y la legislativa. Es decir, al validar la interpretación del Tribunal de Apelaciones se pone un gran signo de interrogación sobre la manera en que se adjudicaron los votos de todas las contiendas en todo Puerto Rico.

El Tribunal de Apelaciones erró al anular una Certificación del Resultado Electoral que se presume válida conforme a las disposiciones pertinentes en el Código Electoral de 2020 y la normativa que adoptó la Comisión Estatal de Elecciones (CEE). Se equivocó, también, al ordenar un recuento en donde precisamente no se tomen en cuenta esos votos que se presumen válidamente emitidos conforme a las propias directrices de la CEE. Esto sin que, hasta el momento, la Sra. Yanitsia Irizarry Méndez haya presentado evidencia alguna de la existencia de las papeletas votadas en la forma en que pretende controvertir.

Conforme al Reglamento de Elecciones Generales y Escrutinio General 2020 -aprobado por la Comisión Estatal de Elecciones el 11 de septiembre de 2020 con el aval unánime de todos los comisionados electorales- se le representó a los electores que podían votar en dicha papeleta de diversas maneras, incluyendo hacer una marca bajo la insignia de un

partido político y marcas al lado de los candidatos de otros partidos, lo cual reglamentariamente se denominó "voto mixto". Véase Regla 50 del Reglamento de Elecciones Generales y Escrutinio General 2020.

Ahora, tras finalizar la elección, después de efectuarse un primer recuento y conocerse sus resultados, con un alcalde en propiedad al mando de la gestión administrativa del Municipio de Aguadilla, la candidata que perdió solicita que se descarten las papeletas de quienes descansaron en las representaciones de la CEE sobre la validez de ejercer su voto de esta manera. A juicio de la candidata, las alternativas que la CEE ofreció para completar la papeleta deben alterarse luego de concluida la elección, y contabilizados los resultados, para que ese "voto mixto" -ya emitido- no sea una opción. Se reitera, ello implicaría anular miles de papeletas que fueron emitidas conforme a las representaciones reglamentarias previas de la CEE. Tal curso de acción es improcedente por razones estatutarias y constitucionales.

La anulación de votos ("disenfranchisement") producto de un cambio ex post facto en las reglas de una elección ya celebrada, donde se induce a error al elector, plantea serios problemas constitucionales. Véase Griffin v. Burns, 570 F.2d 1065 (1er Circ. 1978). Conforme se ha notado, "changing the rules of the game after it has been played and the score is known, violates fundamental rules of fair play. Such action gives the appearance of, as well as is, actual unfairness and consequently violates due process of law."

PNP v. Barreto Pérez, 639 F.2d 825, 827 (1er Circ. 1980) citando a PNP v. Barreto Pérez, 507 F. Supp. 1164, 1174 (D.P.R. 1980). Véase además Bonas v. Town of N. Smithfield, 265 F.3d 69 (1er Cir. 2001).

Por ello, debimos ordenar la paralización del recuento de votos pautado para mañana, sábado, 27 de febrero de 2021. Hubiese expedido el recurso de certiorari que el Hon. Julio Roldán Concepción (señor Roldán) presentó, y concedido su petición de paralizar los efectos de la Sentencia del foro apelativo intermedio hasta que atendiéramos la controversia en los méritos. Por entender que sus reclamos son meritorios, correspondía que revocáramos el dictamen que emitió el Tribunal de Apelaciones y reinstaláramos la Sentencia que dictó el Tribunal de Primera Instancia.

I

El 3 de noviembre de 2020, al igual que en el resto del país, se llevaron a cabo las elecciones para la Alcaldía del Municipio de Aguadilla. Esa noche la CEE emitió un resultado parcial de la contienda a favor del Hon. Julio Roldán Concepción (peticionario) por una diferencia de menos de 100 votos. Ante ese resultado parcial, bajo lo dispuesto en el Artículo 10.8 del Código Electoral de Puerto Rico de 2020 (Código Electoral de 2020), la CEE ordenó realizar un recuento de los votos antes de hacer el procedimiento de escrutinio. La CEE dispuso que "[l]a adjudicación de votos manual se llevar[ía] a cabo conforme lo establecido en los reglamentos y manuales aprobados, de forma unánime, por la Comisión en pleno y según se adjudica por la máquina de

escrutinio. Prevaleciendo así el principio de que cada voto tiene el mismo peso y valor". Resolución CEE-AC-20-508.

En desacuerdo la señora Irizarry Méndez presentó por primera vez en el foro judicial la controversia que hoy atendemos nuevamente. Recurso de revisión judicial, Caso Núm. SJ2020CV6543. Allí alegó que las máquinas de recuento y escrutinio estaban programadas incorrectamente para contabilizar y adjudicar papeletas que, a su juicio, eran inválidas por no cumplir con la definición de voto mixto del Código Electoral de 2020. Luego de evaluar la controversia, el Tribunal de Primera Instancia desestimó el recurso por falta de jurisdicción. Posteriormente, el Tribunal de Apelaciones confirmó la determinación y, traído ante nuestra consideración, este Tribunal denegó el recurso. En consecuencia, procedía que la CEE realizara el recuento de las papeletas municipales del precinto de Aguadilla utilizando las máquinas programadas conforme al reglamento de elecciones. Estas son las mismas máquinas que se usaron para el escrutinio del resto de las contiendas del país.

El recuento concluyó y el 31 de diciembre de 2020 la CEE certificó al señor Roldán Concepción como el Alcalde Electo del Municipio de Aguadilla al obtener 8,845 votos a su favor. Estos son 50 votos más que su contrincante, la señora Irizarry Méndez, quien obtuvo el segundo lugar de la contienda con 8,805 votos a favor. Al amparo de esa certificación, el señor Roldán Concepción prestó juramento al cargo y desde entonces ejerce como alcalde del Municipio de Aguadilla.

El 4 de enero de 2021 la señora Irizarry Méndez presentó en el Tribunal de Primera Instancia un Recurso de Impugnación de Elección al amparo del Art. 10.15 del Código Electoral de 2020. En su recurso, alegó que la certificación del señor Roldán Concepción como alcalde del Municipio de Aguadilla era cuestionable toda vez que en el proceso de recuento que se realizó para ese cargo se contabilizaron y adjudicaron varias papeletas inválidas. Argumentó que las papeletas en controversia no constituían un voto mixto según definido por los Arts. 2.3(76) y 9.10 del Código Electoral de 2020. En apoyo a su contención sostuvo que durante el escrutinio general varios funcionarios observaron que más de cincuenta (50) papeletas municipales que no cumplían con la definición de voto mixto del Código Electoral fueron adjudicadas como tal. Así, la señora Irizarry Méndez regresó al foro judicial para cuestionar la validez de las papeletas en las que el elector hizo una marca bajo la insignia de un partido y una marca en el recuadro de un candidato de otro partido, pero no hizo marca alguna en la columna de la insignia que marcó.

Por su parte, la CEE presentó una *Urgente Solicitud de Desestimación y Oposición* a *Impugnación de Certificación* en la que adujo que la reclamación de la señora Irizarry Méndez no solo era contraria a los postulados del Código Electoral, sino que ignora el principio de que se debe respetar la intención del elector. Además, señaló que la recurrida no precisó ni probó que la descalificación de las papeletas mixtas que alegó ilegales cambiaría el resultado de la

elección en su favor. Por ello, solicitó la desestimación del recurso que la recurrida instó.

El Tribunal de Primera Instancia notificó una Sentencia el 2 de febrero de 2021 en la que desestimó la acción de impugnación ante su consideración. Analizó que, aplicar de forma rígida y textualista la letra del Código Electoral en esta controversia constituiría una intervención indebida con el derecho constitucional al voto de los electores que ya votaron. En consecuencia, validó la adjudicación de los votos mixtos emitidos y procesados por las máquinas de escrutinio programadas conforme al reglamento de elecciones, según enmendado el 11 de septiembre de 2020. Inconforme con esa decisión, la señora Irizarry Méndez recurrió al Tribunal de Apelaciones. Luego de evaluar los argumentos, el foro intermedio revocó la Sentencia del foro primario y declaró nula la certificación electoral del señor Roldán Concepción como Alcalde del Municipio de Aguadilla. Expresó que las papeletas se deben adjudicar conforme al Código Electoral de 2020. Analizó que el acuerdo del Presidente y los Comisionados Electorales de la CEE de enmendar la Regla 50 del Reglamento de Elecciones es ilegal al establecer una definición de voto mixto que no se ajusta a la definición del Código Electoral. A tono con ello, ordenó a la CEE a comenzar --dentro de un término de cinco (5) días-- un recuento manual de las papeletas de esa contienda excluyendo las papeletas de voto mixto en controversia.

**II**

A.

Nuestra Constitución reconoce expresamente el derecho al sufragio universal, igual, directo y secreto. Sec. 2, Art. II, Const. ELA, LPRA, Tomo I. Este derecho se ha distinguido como uno de los mayores postulados de nuestra Carta Magna porque enfatiza "el carácter democrático de nuestra sociedad donde el poder político emana del Pueblo y se ejerce con arreglo a la voluntad manifiesta en las urnas". PSP v. Comisión Estatal de Elecciones, 110 DPR 538, 405 (1980).

Vale recalcar que nuestra Constitución también dispone que "[n]adie será privado del derecho al voto por no saber leer y escribir […]". Sec. 4, Art. VI, Const. ELA, LPRA, Tomo I. Lo anterior consagra la centralidad del Derecho Electoral como garante del derecho de cada persona a ejercer su prerrogativa electoral —en especial, a las poblaciones más vulnerables— y no como un medio para diluirla o suprimirla.

En atención a la importancia que consagra este derecho para la democracia, hemos reiterado que nuestro análisis debe partir de dos premisas ineludibles. Por un lado, "**el sufragio como expresión individual y colectiva**" ocupa en nuestro ordenamiento jurídico "**un sitial de primerísimo orden que obliga a los tribunales a conferirle la máxima protección**". (Énfasis suplido). Suarez Jiménez v. CEE I, 163 DPR 347, 355 (2004). Por otro lado, presente el mínimo indicio de vaguedad o laguna en las disposiciones normativas que regulan el ejercicio al voto, "la interpretación adoptada **debe dar primacía a la máxima protección de la**

**expresión electoral**". (Énfasis suplido). <u>Íd.</u>; <u>Santos v. CEE</u>, 111 DPR 351 (1981).

Basado en la primacía del derecho constitucional al voto, hemos reafirmado que, como principio rector de interpretación estatutaria en materia electoral, al evaluar la validez de un voto emitido:

> [D]ebe ser norma irreducible la de **evaluarlo con el mayor respeto a la voluntad del elector** y **con el óptimo esfuerzo por salvar su intención** si ésta encuentra apoyo en la inteligencia aplicada al examen de la papeleta, **obviando inobservancias de índole formal que en el ejercicio de entendimiento razonable no ocultan ni enredan en confusión la verdadera intención del votante.** (Énfasis suplido). <u>Suárez Jiménez v. CEE I</u>, supra, pág. 356 (citando a <u>PSP v. Comisión Estatal de Elecciones</u>, supra, pág. 460).

Cónsono con lo anterior, el Art. 5.1 del Código Electoral de 2020, 16 LPRA sec. 4561, recoge ese principio de rango constitucional cuando dispone:

> Reafirmando el derecho fundamental al voto universal, igual, directo, secreto y protegido contra toda coacción **y la garantía de la más clara expresión e <u>intención de la voluntad democrática del pueblo</u>**, también reconocemos los siguientes derechos y prerrogativas de los Electores:
>
> (1) **El derecho a la libre emisión del voto y a que este se cuente y <u>se adjudique conforme a la intención del Elector al emitirlo</u>**, y según se dispone en este subtitulo.
>
> (2) **<u>La supremacía de los derechos electorales individuales del ciudadano</u>** sobre los derechos y las prerrogativas de todos los Partidos, Candidatos Independientes y agrupaciones políticas.
>
> […]
>
> (5) **El derecho del Elector a que el sistema y los procedimientos electorales estén fundamentados en su <u>más amplia participación y accesibilidad</u>, tomando en consideración <u>su dignidad</u> y su**

**credibilidad personal**, y no en la desconfianza de los Partidos Políticos u otros electores.

Igualmente, el Art. 10.10 del Código Electoral de 2020, 16 LPRA sec. 4760, recalca lo siguiente:

> En la adjudicación de una papeleta, **el criterio rector que debe prevalecer es respetar la intención del Elector al emitir su voto con marcas válidas que se evaluarán <u>conforme a reglas de adjudicación objetivas y uniformes</u>** utilizadas por los sistemas electrónicos de votación o escrutinio utilizados por la Comisión.
>
> [...]

Nótese que nuestro ordenamiento jurídico consagra un principio que hemos reiterado sin ambages en nuestra historia democrática: la validez del voto conforme a la intención clara e inequívoca del elector.

En <u>PSP v. Comisión Estatal de Elecciones</u>, supra, ordenamos que se validaran todas las papeletas cuya intención del elector fuera manifiestamente inequívoca a favor de unos candidatos, así como las que tenían una marca sobre la insignia de un partido en particular, independientemente de si estas se hicieron dentro de los límites del cuadrante provisto para ello. Esto aun cuando el *Manual de Procedimientos para Funcionarios de Colegios y Coordinadores de Unidad Electoral* que se aprobó para esos comicios dispuso que esas marcas se tomarían por no puestas. Sobre el particular, este Tribunal expresó con notable contundencia:

> En esas instancias, nuestra misión suprema es salvar —por la preeminencia del derecho envuelto— aquellas situaciones en las cuales una interpretación literal y rigurosa plantearía graves interrogantes y objeciones de carácter constitucional. Así, cuando el texto legal habla

y se configura en términos absolutos, requiere que hagamos un esfuerzo por evitar el choque constitucional, si bien validándolo, pero atemperándolo si posible, y se logra satisfactoriamente la armonía entre el interés gubernamental envuelto y el valor primario del sufragio. Íd., pág. 429.

En ese entonces, defendimos a capa y espada el voto que emitió el elector y concluimos que "la medida determinante es si la marca refleja claramente la intención del elector y no el evento fortuito de que la marca fue incorrectamente ubicada". Íd., pág. 432.

Posteriormente, en Santos v. Comisión Estatal de Elecciones, 111 DPR 351 (1981), acatamos los principios que esbozamos en PSP v. Comisión Estatal de Elecciones, supra, para determinar la validez de unos votos adjudicados a un candidato cuando no se marcó conforme a la normativa vigente, pero sí se desprendía con inequívoca claridad el candidato preferido por el elector y el cargo para el cual solicitaba se adjudicara el voto. Esto a pesar de que el elector no siguiera las instrucciones vertidas. Allí dijimos:

> El evento comicial envuelve a una población que excede el millón y medio de todo tipo de personas, de las más diversas posiciones sociales y condiciones intelectuales y académicas. Bajo esa óptica, hemos de recordar la admonición constitucional de que "[n]adie será privado del derecho al voto por no saber leer o escribir […]". En su correcta dimensión este postulado puede conllevar, en sus variadas manifestaciones, una prohibición a que se anule el voto por que el elector no siga instrucciones que sólo afectan de manera mínima el interés legislativo que persigue reconocer la verdadera voluntad del elector. (Citas omitidas). Íd., pág. 357.

Luego, en Suárez Jiménez v. CEE, supra, atendimos una controversia con hechos muy similares a los que tenemos hoy

ante nuestra consideración. Allí se solicitó que se emitiera una sentencia declaratoria en la que se validaran los votos emitidos en la papeleta estatal cuya marca estaba bajo una de las insignias de los partidos y, a su vez, contenían una marca en cada uno de los encasillados correspondientes a los candidatos a los cargos de gobernador y comisionado residente de partidos políticos distintos a la insignia que marcó. Determinamos a favor de su validez. Aunque en ese caso el texto diáfano del Reglamento aprobado por la CEE y su *Manual de Procedimientos para las Elecciones Generales de 2004* fue suficiente para resolver la controversia,[1] enunciamos que el esquema descrito en esas fuentes legales:

> [H]an establecido un mecanismo uniforme para adjudicar los votos en el escrutinio como en el recuento y cómo tratar las papeletas íntegras, recusadas, mixtas y mixtas recusadas o protestadas. Este mecanismo está predicado en el principio de que todas las papeletas que estén igualmente situadas habrán de recibir el mismo trato y se adjudicarán de la misma manera. De esta forma se evita toda posibilidad de arbitrariedad y de la existencia de estándares divergentes al momento del escrutinio o del recuento, y se garantiza así el derecho al voto del elector. Íd., en la pág. 362.

En otras palabras, al validarse la intención del elector en este tipo de voto mixto, se garantiza el derecho al voto

---

[1] La Regla 50 del Reglamento para las Elecciones Generales y el Escrutinio General de 2004 disponía:

> Voto Mixto: — Cuando el (la) elector(a) ennegrece el óvalo, hace una marca o cruz de cualquier dimensión o forma dentro del cuadrante de la insignia del Partido político de su preferencia, y hace, además, una cruz o marca individual dentro del cuadrante donde aparece el nombre de una o más candidatas en las columnas de otros partidos políticos, o candidatas independientes, o escribe nombres de personas que no figuren como candidatas en la columna de Nominación Directa.

del elector y se mantiene la uniformidad del mecanismo de conteo de votos de forma que se evite la arbitrariedad del proceso.

Es importante señalar que la Corte de Apelaciones para el Primer Circuito de Boston expresó —en un recurso que se instó paralelamente en el foro federal sobre ese caso— **que la posición contraria avalaría la privación del voto de miles de electores**. (Énfasis suplido). <u>Rossello-Gonzalez v. Calderon-Serra</u>, 398 F.3d 1, 17 (2004).[2] Ante ello, revocó una determinación del Tribunal de Distrito federal de San Juan e indicó que los tribunales federales no debían intervenir para excluir votos, salvo en circunstancias excepcionales. <u>Íd</u>.

Finalmente, tan reciente como hace poco más de un mes, en <u>Rodríguez Ramos v. CEE y otros</u>, 2021 TSPR 3, este Tribunal —de forma unánime— se amparó en nuestros dictámenes anteriores sobre la supremacía de la intención clara del elector para resolver que esta impera sobre toda papeleta en el que el voto del elector sea claro, aún cuando este no siga alguna instrucción de forma. Lo anterior para validar los votos emitidos a favor de un candidato por nominación directa ("write-in") en papeletas en las cuales no se había marcado con exactitud lo

---

[2] "Here, the final decision under Puerto Rico law to adjudicate all three-mark ballots under one consistent standard does not disenfranchise any Puerto Rico voters— indeed, it is the position espoused by the Rosselló Plaintiffs that stands to disenfranchise an estimated 28,000 voters". <u>Rossello-Gonzalez v. Calderon-Serra</u>, 398 F.3d 1, 17 (2004).

dispuesto expresamente en la normativa aplicable. Allí reafirmamos:

> Al evaluar la trayectoria jurisprudencial de este Tribunal sobre la intención del elector, [la doctrina de la intención del elector] es una regla de interpretación para situaciones no anticipadas o imprevistas por el Legislador o donde haya ambigüedad en el ordenamiento jurídico aplicable. Circunstancias donde la aplicación literal de una norma de adjudicación **pueda frustrar el derecho al voto y para no anular el sufragio emitido en caso de que el elector no siga alguna instrucción de forma**. (Énfasis suplido), <u>Rodríguez Ramos v. CEE y otros</u>, supra, pág. 14.

En ese dictamen recalcamos "**la supremacía de la clara intención del elector al marcar su papeleta de votación sobre cualquier interpretación literal de un estatuto que pueda frustrar el valor de un voto emitido**". (Énfasis en el original). <u>Íd.</u>, pág. 15. Asimismo, reafirmamos lo que expusimos en <u>PSP v. Comisión Estatal de Elecciones</u>, supra, sobre que cuando la intención del elector es clara, "**la sustancia debe prevalecer sobre la forma**". (Énfasis en el original). <u>Íd.</u>, pág. 16. Reiteramos que "[l]a medida determinante es si la marca refleja claramente la intención del elector y no el evento fortuito de que la marca fue incorrectamente ubicada". <u>Íd.</u> (citando a <u>PSP v. Comisión Estatal de Elecciones</u>, supra, pág. 432). Allí también enfatizamos que la aplicación de esta norma "cumple con el mandato constitucional de garantizar el derecho al voto […], [pues] **la intención del elector debe respetarse cuando ésta sea clara**". (Énfasis en el original). <u>Íd.</u>, pág. 16. De igual forma, reiteramos que "**lo realmente trascendental es**

**lo que finalmente [el elector] expresó en la papeleta**".

(Énfasis en el original). <u>Íd.</u>, pág. 37. Así, concluimos:

> Así, nos reiteramos en lo ya expresado en múltiples decisiones de que **al evaluar un voto debemos hacerlo con el mayor respeto a la voluntad del elector** y **con el <u>óptimo esfuerzo por salvar su intención</u>**, si ésta encuentra apoyo en la inteligencia aplicada al examen de la papeleta. (Énfasis suplido). <u>Íd.</u>, pág. 33.

Los pronunciamientos anteriores subrayan la esencialidad del respeto a la intención del elector como piedra angular del derecho fundamental al voto. Más importante aún, demuestran el mandato inequívoco que tenemos como garantes de ese derecho a prevenir, a toda costa, su dilución o privación. Esto, sobretodo, contra tecnicismos y tácticas frívolas y acomodaticias —posteriores al evento— que utilizan aquellos que se aferran a un escaño y que no comprenden que este le pertenece a la voluntad del Pueblo.

Hoy, con su denegatoria, una Mayoría de este Tribunal deja en vigor una sentencia que pretende soslayar esos principios básicos amparándose en un análisis textualista y limitado de la definición de "papeleta mixta" según aparece en el Código Electoral de 2020. Según vimos, lo anterior ignora un postulado reiterado en nuestro ordenamiento: el voto donde el elector hace una marca bajo la insignia de un partido y también hace una marca en el recuadro en blanco al lado de un candidato en la columna de otro partido siempre ha constituido en Puerto Rico una forma legítima de votar. Esto aun si no está expresamente incluído bajo la definición

textual de "papelata mixta" que aparece en el Código Electoral de 2020. Como veremos a continuación, nada en ese cuerpo normativo lo prohíbe categóricamente. Ante ese vacío, y en virtud de nuestros pronunciamientos anteriores, existe un Reglamento que lo viabiliza expresamente a tenor de la facultad que le confiere el Código Electoral a la Comsión Estatal de Elecciones.

B.

La controversia ante nosotros surge a raíz de la aprobación apresurada de un nuevo Código Electoral, a apenas cuatro meses de que se celebraran los comicios generales. La nueva legislación incorporó cambios significativos al proceso electoral. Así, se cambió la manera en que se ejecutarían varios actos electorales y se redefinieron algunos conceptos. Entre ellos, se redefinió lo que se conoce como el voto mixto.

A pesar del reconocimiento que ha tenido el voto mixto a través de la historia puertorriqueña, el Art. 2.3 (76) del Código Electoral define "papeleta mixta" como:

> [A]quella en la que el Elector hace una Marca Válida dentro del rectángulo en blanco bajo la insignia del partido político de su preferencia, debiendo votar por al menos un candidato dentro de la columna de esa insignia, y hace una Marca Válida dentro del rectángulo en blanco al lado de cualquier candidato de ese mismo partido político en la columna de otro partido o candidato independiente; o escribiendo el nombre completo de otra persona en el encasillado de la columna de nominación directa que corresponda a la candidatura y debiendo hacer una Marca Válida dentro del rectángulo en blanco al lado de cada nombre escrito.

Más adelante, el Art. 9.10 del mismo cuerpo legal dispone las instrucciones al elector que deben constar escritas en la papeleta. Similarmente, la instrucción sobre cómo votar mixto lee como sigue:

> Para votar mixto, haga una Marca Válida dentro del rectángulo en blanco bajo la insignia del partido político de su preferencia, votando al menos por un candidato dentro de la columna de esa insignia, y haga una Marca Válida dentro del rectángulo en blanco al lado de cualquier candidato en la columna de otro partido o candidato independiente; o escriba el nombre completo de otra persona en el encasillado de la columna de nominación directa que corresponda a la candidatura y también debe hacer una Marca Válida dentro del rectángulo en blanco al lado de cada nombre escrito.

De otra parte, el Código Electoral hace referencia a varias causas que invalidan una papeleta. Algunas de estas son la "papeleta mal votada o cargo mal votado", la "papeleta nula" y la "papeleta sin valor de adjudicación". Se considera una papeleta mal votada aquella en la que el elector **marcó más candidatos** o nominados de los que tiene derecho a votar. Art. 2.3 (75) del Código Electoral.[3] De otra parte, una papeleta es nula cuando aparece: (1) arrancada la insignia de algún partido político, (2) escrito un nombre salvo que sea en la columna de nominación directa, o (3) tachado un nombre de un candidato. Art. 2.3 (78) del Código Electoral.[4] También son nulas las papeletas

---

[3] El Art. 2.3 (75) define "Papeleta Mal Votada o Cargo Mal Votado" como sigue:

> Se refiere a cuando el Elector marcó en la Papeleta de votación más Candidatos o nominados de los que tiene derecho a votar. En este caso ninguno de los Candidatos o nominados acumulará votos. Cuando se trate de votaciones de cargos o nominados solo las Papeletas votadas por candidatura o Papeletas Mixtas podrán tener cargos mal votados. Cuando se trate de Referéndums o Plebiscitos, votar por más de una alternativa sobre un mismo asunto se considerará como Papeleta Mal Votada.

[4] El Art. 2.3 (78) define "Papeleta Nula" como sigue:

que **contengan "iniciales, palabras, marcas o figuras de cualquier clase que no sean de las permitidas para expresar el voto y que pueda hacerla incompatible para ser interpretada por el sistema de escrutinio electrónico"**. Íd. Por último, son papeletas sin valor de adjudicación las papeletas en blanco, *Over Voted*, *Under Voted* y las nulas. Art. 2.3 (83) del Código Electoral.[5] Como carecen de valor de adjudicación, estas papeletas no forman parte del cómputo de los porcientos del resultado de la votación. Íd.

Por otro lado, el 11 de septiembre de 2020, dos meses después de que se aprobó el Código Electoral, se revisó el *Reglamento* Elecciones Generales y Escrutinio General 2020 (Reglamento). Este fue aprobado por todos los Comisionados Electorales, incluyendo el Comisionado Electoral del partido político de la aquí recurrida.[6] En lo pertinente,

---

Papeleta votada por un Elector en donde aparece arrancada la insignia de algún Partido Político; escrito un nombre, salvo que sea en la columna de nominación directa; o tachado el nombre de un Candidato o que contenga iniciales, palabras, marcas o figuras de cualquier clase que no sean de las permitidas para expresar el voto y que pueda hacerla incompatible para ser interpretada por el sistema de escrutinio electrónico. No se considerará como Papeleta Adjudicada.

[5] El Art. 2.3 (83) dispone que son "Papeleta Sin Valor de Adjudicación" aquellas:

Papeletas en blanco, Over Voted, Under Vote[d] y las nulas. Dichas Papeletas no formarán parte del cómputo de los porcientos del resultado de la Votación. Solo podrán ser contabilizadas de manera agrupada en sus respectivos encasillados impresos en las Actas de Escrutinio para los efectos de cuadre contable en los Colegios de Votación y no como parte de las certificaciones de los resultados de cada votación. Dichas Papeletas sin Valor de Adjudicación, sin expresión válida de intención del Elector, "de ninguna manera puede ser contado para efectos de influir o afectar el resultado de una elección, referéndum o plebiscito, entre otros eventos electorales." (Cita omitida). Art 2.3(83), Código Electoral, supra.

[6] Cabe resaltar que, al igual que lo hicimos en Suárez Jiménez v. Comisión Estatal de Elecciones, 163 DPR 541, 543 (2004), ningún candidato a puesto electivo, partido político o sus Comisionados Electorales impugnaron la validez de las disposiciones relativas a la adjudicación del voto mixto del *Reglamento Elecciones Generales y*

la Regla 50 del referido Reglamento establece que un voto mixto es:

> [C]uando el elector hace una marca válida bajo la insignia del partido político de su preferencia, y hace, además, una o más marcas válidas al lado de los nombres de los candidatos en columnas de otros partidos políticos o candidatos independientes o nomine personas que no figuren como candidatos en la columna de Nominación Directa escribiendo el nombre o nombres y haciendo una marca válida en el área de reconocimiento de marcas.

Como se puede apreciar, conociendo las definiciones confusas del voto mixto que surgen del Código Electoral, los Comisionados Electorales mantuvieron la definición de voto mixto que se ha reconocido por años en Puerto Rico sin añadir requisitos adicionales.

¿Cómo cinco Comisionados Electorales aprobaron unánimemente un Reglamento que valida la forma de votar que está aquí en controversia? La respuesta es sencilla. Al amparo de décadas de pronunciamientos inequívocos que reiteran un principio cardinal en las sociedades democráticas y que está muy presente en la consciencia colectiva de nuestro Pueblo: en el ejercicio del derecho de cada persona a elegir a sus representantes conforme a su voluntad, **cada voto cuenta**.

Erradamente, el Tribunal de Apelaciones entendió que el Código Electoral de 2020 prohíbe el tipo de voto mixto que está en controversia. No solo no lo hace

---

*Escrutinio General 2020*. Por el contrario, los partidos políticos a través de sus Comisionados Electorales y, por ende, los candidatos de los partidos, participaron del proceso de aprobación del Reglamento y lo validaron de forma unánime. Así lo reconoce, incluso, el Presidente de la Comisión Estatal de elecciones en la certificación CEE-AC-20-508. Cualquier intento de impugnar el Reglamento en estos momentos es tardío.

categóricamente sino que principios de rango constitucional impiden que se dé otra interpretación. Cónsono con nuestros pronunciamientos anteriores, así como con la democracia que juramos defender, la única interpretación plausible es determinar que ese modo de votar está permitido y debe validarse conforme a la intención indudable del elector.

IV

En el recurso que el peticionario nos presentó, este planteó, entre otros señalamientos, que el Tribunal de Apelaciones erró al determinar que un voto mixto válido **es únicamente** aquel que, además de tener una marca bajo la insignia de un partido y a favor de un candidato fuera de esa columna, contiene otra marca en al menos un candidato en la columna del partido por el que votó. Asimismo, planteó que la interpretación del foro apelativo intermedio tiene el efecto de invalidar el voto que emitió el elector conforme a su intención inequívoca. Tiene razón.

Conforme al análisis que antecede, el Tribunal de Apelaciones resolvió incorrectamente al ordenar un recuento en donde precisamente no se tomen en cuenta esos votos que se presumen válidamente emitidos. Esto a tenor del análisis discutido aquí, así como de las propias directrices de la CEE.

Nótese, además, que según se dispuso en el Reglamento de Elecciones Generales y Escrutinio General 2020 —aprobado con el aval unánime de todos los comisionados electorales— se le representó a los electores que podrían votar en la

papeleta de diversas maneras, incluyendo hacer una marca bajo la insignia de un partido político y marcas al lado de los candidatos de otros partidos, lo cual reglamentariamente se denominó "voto mixto". Es insostenible que, ahora, finalizada la elección, la recurrida solicite que se descarten las papeletas de quienes confiaron en las representaciones expresas que le hizo la CEE que, a su vez, tampoco están prohíbidas por el ordenamiento vigente. **Tal razonamiento podría implicar la anulación de miles de papeletas que fueron emitidas conforme a las representaciones reglamentarias previas de la CEE.** De igual forma, este Tribunal valida que se permita cambiar las reglas del juego —después de celebrados los comicios electorales— con el efecto de crear reglas particulares **para adjudicar el voto en la contienda electoral de <u>un</u> solo municipio.** Tal curso de acción no debió permitirse por este Tribunal por las diversas razones que expuse anteriormente.

Como indiqué en mi Opinión de conformidad en <u>Rodríguez Ramos v. CEE y otros</u>, supra, "consideraciones constitucionales limiatan la facultad del Estado para cambiar las reglas del juego en una elección ya celebrada". <u>Íd.</u>, pág. 4. En otras palabras, "si el Estado ha aprobado unas reglas para una elección no podría luego pretender anular los votos que se han emitido conforme a estas, promoviendo un cambio ex post facto en las reglas de la elección". (Citas omitidas). <u>Íd</u>.

El cambio de las reglas posterior a la celebración plantea dudas sobre el debido proceso de ley, así como pone en entredicho el principio fundamental de que el derecho al voto incluye el derecho a que sea contado en su día. <u>Wesbery v. Sanders</u>, 376 US 1, 17 (1964). Consideraciones basadas en lo anterior nos deben mover a rechazar todo intento de supresión retroactiva de los votos que se emitieron conforme a la intención inequívoca del elector y en armonía con las disposiciones de nuestro ordenamiento electoral.

Por todo lo anterior, hubiese expedido el recurso de *certiorari* que el Hon. Julio Roldán Concepción presentó, así como hubiese concedido su petición de paralizar los efectos de la Sentencia del foro apelativo intermedio hasta que atendiéramos la controversia en los méritos. Por entender que sus reclamos son meritorios, correspondía que revocáramos el dictamen que emitió el Tribunal de Apelaciones y reinstaláramos la Sentencia que dictó el Tribunal de Primera Instancia.


                                    Maite D. Oronoz Rodríguez
                                         Jueza Presidenta

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Yanitsia Irizarry Méndez, como
candidata a la alcaldía del
Municipio de Aguadilla por el
Partido Nuevo Progresista

    Recurrida

             v.

Julio Roldán Concepción, Alcalde
electo del Municipio de
Aguadilla por el Partido
Popular Democrático; *et als.*

    Peticionario

CC-2021-0130

Voto Particular Disidente emitido por el Juez Asociado señor COLÓN PÉREZ

En San Juan, Puerto Rico a 26 de febrero de 2021.

Hoy este Tribunal, en un acto sin precedente, -- y contrario a los postulados más básicos que rigen nuestro ordenamiento jurídico en materia de derecho al voto -- *sub silentio*, permite el inicio de una "expedición de pesca", que busca variar el resultado al que se llegó el pasado 3 de noviembre de 2020, en lo relacionado a la contienda electoral por la Alcaldía del Municipio de Aguadilla. **Ello, fundamentado en meras alegaciones de la parte recurrida, la señora Yanitsia Irizarry Méndez (en adelante, "señora Irizarry Méndez"), sobre la existencia de determinados votos que ella considera nulos; planteamientos que -- en ningún momento --**

**fueron probados ante un tribunal de justicia.[7]**

Como si lo anterior fuese poco, para viabilizar tal asalto a la democracia puertorriqueña, la señora Irizarry Méndez solicitó al Tribunal de Apelaciones, -- y dicho foro, en un escueto escrito, accedió a tal pedido -- que se invalidara uno de los pocos actos acertados de la Comisión Estatal de Elecciones (en adelante, "C.E.E."), en relación con el proceso electoral celebrado en el País hace más de cuatro (4) meses, y mediante el cual la referida entidad gubernamental buscó garantizar que la intención de todo elector y electora fuese respetada.[8]

---

[7] Recordemos que, según las exigencias de la Regla 110 de Evidencia, 32 LPRA Ap. VI, R. 110, y conforme a las reiteradas expresiones de esta Curia, **los hechos no se prueban con meras alegaciones**. Véase, *U.P.R Aguadilla v. Lorenzo Hernández*, 184 DPR 1001, 1013 (2012); *Pereira Suarez v. Jta. Dir. Cond.*, 182 DPR 485, 509 (2011); *Asoc. Autentica Empl. v. Municipio de Bayamón*, 111 DPR 527, 531 (1981). Como bien nos dice el profesor Ernesto L. Chiesa Aponte, "[e]l lenguaje de la regla resulta filosóficamente correcto, pues quien afirma la existencia de algo, tiene la obligación de presentar evidencia para demostrarlo". E.L. Chiesa Aponte, *Reglas de evidencia comentadas*, San Juan, Ed. Situm, 2016, pág. 49.

[8] Esta no es la primera vez que nos expresamos contundentemente sobre los accidentados comicios del 2020.

Así, por ejemplo, disentimos en el caso *Gautier Vega et al v. Com. Electoral PNP*, 2020 TSPR 124, 205 DPR ___ (2020), en donde este Tribunal validó un acuerdo de los comisionados electorales que enmendaba el Art. 5.17 del Código Electoral de Puerto Rico de 2020, 16 LPRA sec. 4577 (en adelante, "Código Electoral de 2020"), causando así que se extendiera el término para presentar recusaciones.

Una semana después, en *Suárez Molina v. Comisión Local de Elecciones de Cataño, et al.*, 2020 TSPR 129, 205 DPR _____(2020), mi compañera y compañeros de estrado resolvieron que el trámite para revisar una determinación adversa emitida por el presidente de una Comisión Local de Elecciones, en un proceso de recusación por domicilio, se llevaría a cabo conforme al procedimiento establecido para impugnar los demás tipos de recusaciones -- es decir, ante la Comisión Estatal de Elecciones --, lo cual es contrario a la excepción dispuesta en el Art. 5.16 del Código Electoral de 2020, 16 LPRA sec. 4576.

Posteriormente, el 28 de octubre de 2020 para ser específicos, en *Gautier Vega v. Comisión Estatal de Elecciones*, 2020 TSPR 131, 205 DPR ____ (2020), este Tribunal resolvió que la ausencia de la identificación del elector o electora al momento de enviar su voto adelantado por correo, no invalidaba el mismo sino que dicha

Nos referimos a la adjudicación de los votos mixtos, según los lee la máquina de escrutinio, y de conformidad a lo dispuesto en la *Resolución CEE-AC-20-508*, *infra*, y el *Reglamento [de] Elecciones Generales y Escrutinio General 2020*, *infra*.

Así pues, en un lamentable proceder, -- que quedará para la historia, por ser la única ocasión en que este Tribunal, con su silencio, opta por invalidar la intención del elector o electora al momento de emitir su voto --, una mayoría de mis compañeros y compañera ignoran la meritoria petición que hoy nos hace el Alcalde Electo del Municipio de Aguadilla, Hon. Julio Roldán Concepción. Como consecuencia, se podrían invalidar determinados votos mixtos contemplados por el precitado *Reglamento [de] Elecciones Generales y Escrutinio General*

---

deficiencia podía ser subsanada con posterioridad a ello; una vez la Junta Administrativa de Voto Ausente y Voto Adelantado (JAVAA) así le notificara al respecto. Lo anterior, en clara contravención del Código Electoral de 2020, 16 LPRA sec. 4502, así como el Manual de Procedimientos para el Voto Adelantado por Correo de 20 de octubre de 2020, cuerpos reglamentarios que requerían que la identificación fuera enviada junto con la papeleta.

No siendo ello suficiente, el 23 de noviembre de 2020, en *Valentín Rivera v. Rosado Colomer*, 2020 TSPR 142, 205 DPR ___ (2020), una mayoría de este Tribunal optó por imponer serias limitaciones, -- no contempladas en el Código Electoral de 2020, *supra*, ni en los reglamentos correspondientes -- al acceso a las listas de voto adelantado y voto ausente.

Dichos procederes -- tal como la presente determinación -- fueron, a todas luces, incorrectos, por lo que nos vimos en la obligación de disentir.

Cabe mencionar que, al presente, se encuentra ante la consideración de este Tribunal cierto recurso de apelación presentado por el Hon. Miguel Romero Lugo, alcalde electo de San Juan, también relacionado a los comicios de este pasado año. De igual forma, está bajo evaluación determinado recurso de apelación, relacionado a los mismos hechos, presentado por la licenciada Vanessa Santo Domingo, Comisionada Electoral del PNP.

*2020*, *infra.* Votos que históricamente han sido considerados válidos.

Por entender que -- al no presentarse prueba en contrario -- la certificación que se impugna es válida en toda su extensión, somos del criterio que procedía paralizar el recuento pautado para mañana en lo que este Tribunal tenía la oportunidad de evaluar el presente caso en los méritos. No siendo ello así, nuevamente nos vemos en la obligación de disentir. Veamos.

I.

Los hechos medulares que dieron margen al presente litigio no se encuentran en controversia. En esencia, nos corresponde dirimir la procedencia de la impugnación de la elección por la Alcaldía del Municipio de Aguadilla, presentada por la candidata del Partido Nuevo Progresista a dicho escaño, la señora Irizarry Méndez.

El referido petitorio refuta la *Resolución CEE- AC- 20-508* (en adelante, "*Resolución*"), emitida por el Presidente de la Comisión Estatal de Elecciones, Hon. Francisco Rosado Colomer (en adelante, "Presidente de la C.E.E."), mediante la cual se autorizó la adjudicación de determinados votos mixtos, de conformidad con lo dispuesto en los reglamentos y manuales aprobados, -- lo cual incluye el *Reglamento [de] Elecciones Generales y Escrutinio General de 2020*, *infra*, (en adelante

"Reglamento de Elecciones") --, y de acuerdo a lo adjudicado por la máquina de escrutinio.[9]

Bajo estos parámetros, el pasado 3 de noviembre de 2020 fueron adjudicados todos los votos en el País, incluyendo los del Municipio de Aguadilla. Ello le dio la victoria en el referido Municipio a la parte peticionaria, el ahora alcalde electo, Hon. Julio Roldán Concepción.

Inconforme con dicho resultado, la señora Irizarry Méndez, -- luego de un proceso azaroso y tras varios cuestionamientos a destiempo ante los tribunales --, acudió ante el foro primario mediante un *Recurso de revisión judicial*. A través de éste, impugnó los resultados de la referida elección bajo el palio del Art. 10.15 del Código Electoral de 2020, *infra*, por entender que la certificación emitida por la C.E.E. en la contiende electoral por la Alcaldía de Aguadilla fue consecuencia de una acción *ultra vires* de parte de dicha entidad gubernamental.

En específico, ésta adujo que la C.E.E. erró al contar como voto mixto válido aquel voto ejercido haciendo una marca bajo la insignia de un partido político y realizando otras marcas fuera de dicha columna por uno o más candidatos, sin hacer al menos una marca por algún candidato en la columna correspondiente a la insignia política originalmente marcada. La señora

---

[9] Cabe mencionar que las máquinas de escrutinio electrónico estaban programadas según lo dispuesto en el *Reglamento de Elecciones*, *infra*, mas no conforme las disposiciones pertinentes del Código Electoral de 2020, *supra*.

Irizarry Méndez razonó que dicho proceder era contrario a los Arts. 9.10 y 2.3(76) del Código Electoral de 2020, *infra*.

Tras evaluar los planteamientos de las partes, el foro primario emitió la correspondiente *Sentencia*. Allí, entre otras cosas, concluyó que no podía efectuar una lectura literal del Código Electoral de 2020, *infra*, ya que **"da[ría] al traste con la doctrina prevaleciente en materia electoral que rechaza la aplicación textual e inflexible de la norma de adjudicación de votos y nos obliga a respetar la intención del elector"**. Véase, *Certiorari*, pág. 99.

A la luz de lo anterior, y tras dar una interpretación concienzuda de las leyes y reglamentos pertinentes, el Tribunal de Primera Instancia resolvió que es válido un voto mixto emitido en determinada papeleta municipal, cuando tenga una marca bajo la insignia de un partido y una marca por un candidato fuera de la columna de dicho partido, aunque el votante no haya incluido una marca a favor de algún candidato mencionado en la columna de la insignia seleccionada. En consecuencia, el foro primario decretó la validez de las papeletas impugnadas y confirmó la certificación emitida por la C.E.E.

Insatisfecha, la señora Irizarry Méndez recurrió ante el Tribunal de Apelaciones mediante un *Recurso de revisión electoral*. Así pues, tras hacer un análisis del recurso ante su consideración, el foro apelativo

intermedio dictó *Sentencia*. Mediante ésta, revocó el dictamen del Tribunal de Primera Instancia. Ello, tras razonar que "la definición de Voto Mixto que se incluyó en la Regla 50 enmendada el 11 de septiembre de 2020, por dicho Acuerdo unánime no incorpora el mandato legislativo de que en un voto mixto el elector tiene que votar al menos por un candidato bajo la columna del partido político que marcó; es decir, no es conforme a lo dispuesto en el Código Electoral". Véase, *Certiorari*, pág. 11. De conformidad, declaró nula la *Certificación del Resultado Electoral* emitida por la C.E.E. para la contienda de la Alcaldía de Aguadilla y ordenó que -- en un término no mayor de cinco (5) días -- la C.E.E. comenzara un recuento manual de las papeletas emitidas para la elección de referencia.

En desacuerdo con el proceder del Tribunal de Apelaciones, el Hon. Julio Roldán Concepción comparece ante nos mediante moción en auxilio de jurisdicción y petición de *certiorari*. Como ya mencionamos, una mayoría de este Tribunal optó por declarar no ha lugar ambas solicitudes. De ese lamentable proceder, enérgicamente disentimos. Nos explicamos.

II.

A.

Como es sabido, la Constitución del Estado Libre Asociado de Puerto Rico instaura el derecho al voto de todo ciudadano y ciudadana puertorriqueño y puertorriqueña, siendo ello un elemento medular de

nuestro sistema democrático. Const. ELA, Art. II, Sec. 2, LPRA, Tomo 1. En particular, el texto de la mencionada cláusula constitucional establece que las leyes adoptadas por la Asamblea Legislativa "garantizarán la expresión de la voluntad del pueblo mediante el sufragio universal, igual, directo y secreto, y protegerán al ciudadano contra toda coacción en el ejercicio de la prerrogativa electoral". *Íd.*

De forma complementaria, el Art. VI, Sec. 4, de nuestra Carta Magna, indica que se dispondrá por ley todo lo referente a los procesos electorales y de inscripción de electores, así como lo concerniente a los partidos políticos y las candidaturas. Const. ELA, Art. VI, Sec. 4, LPRA, Tomo 1. Cónsono con lo anterior, "la Asamblea Legislativa tiene la facultad y la obligación de aprobar aquella reglamentación que, sin obstaculizar innecesariamente el derecho al voto en todas sus dimensiones, propenda a la realización de un proceso electoral justo, ordenado, libre de fraude, honesto e íntegro". *P.A.C. v. ELA*, 150 DPR 359, 373 (2000). Véase, también, *P.S.P v. Com. Estatal de Elecciones*, 110 DPR 400 (1980); *P.S.P., P.P.D., P.I.P. v. Romero Barceló*, 110 DPR 248 (1980); *P.N.P v. Tribunal Electoral*, 104 DPR 741 (1976).

En virtud de la potestad que tienen los miembros de la Asamblea Legislativa para reglamentar el proceso electoral, se aprobó la Ley Núm. 58-2020, 16 LPRA sec. 4501 *et. seq.*, conocida como el Código Electoral de

Puerto Rico de 2020. De modo que, conforme con dicho propósito, el Artículo 5.1 (8), 16 LPRA sec. 4561(8), del precitado cuerpo de ley, reconoce que los electores y electoras de Puerto Rico podrán ejercer su derecho al voto de varias maneras, a saber: el voto íntegro, el **voto mixto**, el voto por candidatura o el voto por nominación directa de personas a cargos públicos electivos.

Al respecto, y en lo relacionado a la controversia que nos ocupa, el Código de referencia instruye que el voto mixto se efectuará mediante:

> [U]na Marca Válida dentro del rectángulo en blanco bajo la insignia del partido político de su preferencia, votando al menos por un candidato dentro de la columna de esa insignia, y haga una Marca Válida dentro del rectángulo en blanco al lado de cualquier candidato en la columna de otro partido o candidato independiente; o escriba el nombre completo de otra persona en el encasillado de la columna de nominación directa que corresponda a la candidatura y también debe hacer una Marca Válida dentro del rectángulo en blanco al lado de cada nombre escrito. Art. 9.10, Código Electoral de 2020, 16 LPRA sec. 4710.

De forma similar, el precitado cuerpo estatutario define la papeleta mixta como:

> Aquella en la que el Elector hace una Marca Válida dentro del rectángulo en blanco bajo la insignia del partido político de su preferencia, debiendo votar por al menos un candidato dentro de la columna de esa insignia, y hace una Marca Válida dentro del rectángulo en blanco al lado de cualquier candidato de ese mismo partido político en la columna de otro partido o candidato independiente; o escribiendo el nombre completo de otra persona en el encasillado de la columna de nominación directa que corresponda a la candidatura

y debiendo hacer una Marca Válida dentro del rectángulo en blanco al lado de cada nombre escrito. Art. 2.3(76), Código Electoral de 2020, 16 LPRA sec. 4503.

Empero, es menester apuntar aquí que, en aras de particularizar, -- entre otras cosas --, el alcance de lo dispuesto en Artículo 5.1 (8) del Código Electoral de 2020, *supra*, la C.E.E. aprobó **por votación unánime**, el *Reglamento [de] Elecciones Generales y Escrutinio General 2020* de 28 de mayo de 2020, revisado 11 de septiembre de 2020. En lo pertinente, en cuanto a la papeleta municipal, la Regla 50 del precitado *Reglamento de Elecciones Generales* sostiene que se constituye un voto mixto cuando:

> **[E]l elector hace una marca válida bajo la insignia del partido político de su preferencia, y hace, además, una o más marcas válidas al lado de los nombres de los candidatos en las columnas de otros partidos políticos o candidatos independientes o nomine personas que no figuren como candidatos en la columna de Nominación Directa escribiendo el nombre o nombres y haciendo una marca válida en el área de reconocimiento de marcas.** *Íd.*, pág. 43.[10]

La anterior descripción, acertada y correctamente incorporada en el *Reglamento de Elecciones Generales*, *supra*, coincide con el tratamiento que históricamente se le ha dado a ese tipo de voto y, más en específico, con lo dispuesto en el antiguo Código Electoral de Puerto

---

[10] A nuestro juicio, dicha definición es cónsona con el Art. 9.27 del Código Electoral de 2020, 16 LPRA sec. 4727, el cual expresa que "[l]a Comisión reglamentará las maneras en que los electores marcarán sus papeletas de votación. En todo caso, sea en papeleta impresa, en papel o contenida en algún medio electrónico, **la manera para marcar la papeleta que se reglamentará será la más sencilla posible y permitirá que se pueda emitir el voto íntegro, mixto, por candidatura o nominación directa**".

Rico para el Siglo XXI, Ley Núm. 78-2011, 16 LPRA sec. 4001, *et seq*. (derogado) (en adelante, "Código Electoral para el Siglo XXI"), el cual rezaba:

> Para clasificar mixta una papeleta **deberá tener una marca válida bajo la insignia de un partido político y además marcas válidas fuera de dicha columna por uno o más candidatos por los cuales el elector tiene derecho a votar de otro partido político, candidato independiente o escribiendo el nombre o nombres de otros bajo la columna de nominación directa.** En todo caso que exista una controversia sobre la validez del voto bajo la insignia en una papeleta estatal, se tendrá por no puesta la marca bajo la insignia y se adjudicará el voto para los candidatos y se contará como una papeleta por candidatura.
>
> Si en una papeleta aparecen marcados para un mismo cargo electivo más candidatos que los autorizados al elector, no se contará el voto para ese cargo, pero se contará el voto a favor de los candidatos correctamente seleccionados para los demás cargos en la papeleta. Art. 10.005, Código Electoral para el Siglo XXI, 16 LPRA sec. 4195.

Sobre el particular, también es útil señalar lo decidido por esta Curia en *Suárez v. C.E.E. I*, 163 DPR 347 (2004). En el caso de referencia, este Foro validó ciertos votos emitidos en la papeleta estatal durante las elecciones generales celebradas en el año 2004. Específicamente, aquellos votos que contenían una cruz en la insignia de determinado partido político y una cruz en cada uno de los encasillados correspondientes a los candidatos a los puestos de gobernador y de comisionado residente correspondientes a otros partidos políticos. En aquella instancia, este Tribunal sentenció que:

> *[D]ebe ser norma irreducible la de evaluar [sic] [el voto] con el mayor respeto a la voluntad del elector y con el óptimo esfuerzo por salvar su intención si ésta encuentra apoyo en la inteligencia aplicada al examen de la papeleta, obviando inobservancias de índole formal que en el ejercicio de entendimiento razonable no ocultan ni enredan en confusión la verdadera intención del votante.* (Énfasis suplido y suprimido) (cita omitida) *Íd.*, pág. 356.[11]

En fin, de una lectura liberal y en conjunto con la normativa antes expuesta, podemos colegir que el *Reglamento de Elecciones Generales*, *supra*, reafirma los principios que han imperado históricamente en los comicios de nuestro País, entiéndase, el respeto a la voluntad de los electores y electoras.[12] Véase, H.L. Acevedo, *La democracia puertorriqueña y su sistema electoral*, *en* Puerto Rico y su gobierno: estructura, retos y dinámicas, Puerto Rico, Ed. SM, 2016, pág. 309 ("Uno de los principios claves del proceso democrático es que se respete la voluntad de los electores").

---

[11] Es, precisamente, en defensa de dicho principio que, mediante *Opinión Concurrente*, en el reciente caso *Rodríguez Ramos v. Comisión Estatal de Elecciones*, 2021 TSPR 03, 205 DPR ____ (2021), nos expresamos. **Allí, enfatizamos la importancia de vigorosamente resguardar la intención del elector y electora al momento de emitir su voto.**

[12] Tan es así que, en el mismo Código Electoral de 2020, se reconoció la importancia de dar primacía a la intención del elector. Al respecto, el Art. 10.10, 16 LPRA sec. 4760, del precitado estatuto indica que "[e]n la adjudicación de una papeleta, **el criterio rector que debe prevalecer es respetar la intención del Elector al emitir su voto** con marcas válidas que se evaluarán conforme a reglas de adjudicación objetivas y uniformes utilizadas por los sistemas electrónicos de votación o escrutinio utilizados por la Comisión". Véase, también, *Rodríguez Ramos y otros v. Comisión Estatal de Elecciones y otros*, 2021 TSPR 03, 205 DPR____ (2021) (Colón Pérez, opinión concurrente).

En esa dirección, precisa señalar que igual tratamiento -- entiéndase, el procurar respetar la voluntad del electorado -- ha dado el Tribunal Supremo de los Estados Unidos a controversias similares a las que hoy nos ocupan. Así, en *Bush v. Gore*, 531 US 98, 104-105 (2000), la Corte Suprema Federal sentenció, -- en cuanto al ejercicio del derecho al voto --, que "[e]qual protection applies as well to the manner of its exercise. Having once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another".

B.

Por último, y por ser en extremo relevante para la correcta disposición del presente caso, precisa reseñar aquí que, conforme al actual Código Electoral de 2020, *supra*, para que un candidato impugne la elección de otro:

> [D]eberá presentar ante el Juez en la Sala de la Región Judicial de San Juan designada de conformidad con el Capítulo XIII de esta Ley, y dentro de los diez (10) días siguientes a la fecha de notificación de la certificación de elección para cada cargo público electivo en el escrutinio general, un escrito, **exponiendo bajo juramento las razones en que fundamenta su impugnación, las que deberán ser de tal naturaleza que, de probarse, bastarían para cambiar el resultado de la elección**. Art. 10.15, Código Electoral de 2020, 16 LPRA sec. 4765.

Tras analizar la disposición antes mencionada, junto con previas expresiones de este Tribunal, podemos concluir que lo expuesto es cónsono con lo que esta Curia ha sentenciado.

De modo que, al evaluar una disposición de ley electoral similar a la antes esbozada, este Tribunal sostuvo que las impugnaciones post electorales se miden en base de la probabilidad del resultado. *Esteves v. Srio. Cam. de Representantes*, 110 DPR 585 (1981). Siendo ello así, recalcamos que **"[n]o puede fundamentarse una impugnación en meras conjeturas, generalidades, especulaciones o posibilidades remotas sobre su éxito eventual"**. *Esteves v. Srio. Cam. de Representantes*, *supra*, págs. 590-591. Véase, *Granados v. Rodríguez Estrada V*, 127 DPR 1, 20 (1990).

Es, pues, a la luz de la normativa antes expuesta, y no de otra, que procedía disponer de la controversia ante nuestra consideración. Como una mayoría de este Tribunal así no lo hizo, procedemos -- desde el disenso -- a disponer del caso que nos ocupa.

III.

Como mencionamos anteriormente, la señora Irizarry Méndez, candidata para la alcaldía de Aguadilla por el Partido Nuevo Progresista, solicitó ante los tribunales, -- y el Tribunal de Apelaciones acogió tal teoría -- el que se revocase la certificación de dicho escaño, emitida por la C.E.E. a favor del Alcalde Electo, Hon. Julio Roldán Concepción. Ello, ya que -- a juicio de la recurrida -- era improcedente adjudicar un sinnúmero de votos mixtos depositados en las urnas de los comicios celebrados en nuestro País el pasado 3 de noviembre de 2020, pues alega que éstos fueron emitidos de conformidad

con lo dispuesto en el *Reglamento de Elecciones Generales*, *supra*, pero de forma contraria a lo establecido en el Código Electoral de 2020, *supra*. A la luz de este razonamiento, sostiene que el presente caso es consecuencia directa de las actuaciones *ultra vires* de la C.E.E., al permitir que se contabilicen los votos de la forma antes descrita. No le asiste la razón. Mucho menos cuando no tenemos prueba de ello ante nuestra consideración.

Como ha quedado claramente demostrado, la disposición reglamentaria aquí en controversia, -- así como la *Resolución* del Presidente de la C.E.E. que adoptó lo dispuesto en la misma --, se **aprobó unánimemente** por los miembros de la referida dependencia gubernamental con el propósito de aclarar, entre otras cosas, el alcance de lo dispuesto en el Artículo 5.1 (8) del Código Electoral de 2020, *supra*. El Presidente de la C.E.E., así como los Comisionados Electorales de los distintos partidos políticos, estaban facultados para ello.

Así pues, en cuanto a la papeleta municipal, -- objeto del presente litigio --, la Regla 50 del *Reglamento de Elecciones Generales*, *supra*, sostiene que se constituye un voto mixto cuando:

> **[E]l elector hace una marca válida bajo la insignia del partido político de su preferencia, y hace, además, una o más marcas válidas al lado de los nombres de los candidatos en las columnas de otros partidos políticos o candidatos independientes o nomine personas que no figuren como candidatos en la columna de Nominación Directa escribiendo el nombre**

**o nombres y haciendo una marca válida en
el área de reconocimiento de marcas.**

Como ya mencionamos, esta descripción, correcta y adecuadamente incluida en el *Reglamento de Elecciones Generales*, *supra*, es cónsona con la forma en que habitualmente se han adjudicado estos votos. Invalidar éstos, implicaría socavar un voto que históricamente ha sido contado, lo cual a su vez equivaldría a operar al margen de la Constitución.[13] A ese pedido no podemos acceder, no al menos el juez que suscribe.

IV.

En fin, a modo de epílogo, y conforme hemos expresado en nuestras previas opiniones disidentes en asuntos de similar naturaleza, el Código Electoral de 2020, *supra*, ha causado un torbellino de controversias electorales que, como últimos intérpretes de la Constitución, nos compete remediar. Ante ello, tenemos dos opciones: (1) adjudicar las papeletas mixtas como no votadas, mal votadas o sin valor de adjudicación, afectando así una cantidad numerosa de votos y agravando el proceso electoral o; **(2) conferirle primacía a la voluntad de todas y todos los que acudieron a las urnas a luchar con el propósito de cambiar la realidad sociopolítica del País.** Ante el escenario que vivimos, es deber ineludible de este Tribunal elegir la segunda ruta, para así asegurar que una ley -- cuya redacción y aprobación fue igual de tumultuosa que los comicios -- no despoje al

---

[13] Esto por entender que cualquier legislación dirigida a anular la intención del elector es, sin duda, inconstitucional.

País de la poca confianza que mantiene en los procesos democráticos.[14]

V.

Es, pues, por los fundamentos antes expuestos que enérgicamente disentimos de este erróneo e injusto proceder de una mayoría de este Tribunal que, como bien establecimos al principio de este escrito, solo pretende acceder a los caprichos de quienes buscan lesionar nuestro sistema democrático.

Ángel Colón Pérez
Juez Asociado

---

[14] La falta de confianza a la que hacemos referencia, no se fundamenta en meras alegaciones, sino que encuentra base en datos empíricos. Así lo evidencia la Encuesta Mundial de Valores para Puerto Rico, donde se determinó que las "instituciones con el menor nivel de confianza por parte de los ciudadanos fueron los partidos políticos (9.7%), los entes legislativos (14.2%), el gobierno (15.1%) y los funcionarios (19.3%)". De forma similar, al ser preguntados sobre las elecciones, el 46.1% de las personas indicaron que no tenían ninguna confianza en ellas. Véase, Instituto de Estadísticas de Puerto Rico, *Encuesta mundial de valores para Puerto Rico*, https://estadisticas.pr/files/Comunicados/Encuesta_Mundial_de_Valores_para_Puerto%20Rico_20190617.pdf (última visita, 26 de febrero de 2021); Instituto de Estadísticas de Puerto Rico, *Revelan datos de la Encuesta Mundial de Valores para Puerto Rico*, https://estadisticas.pr/en/media/3287 (última visita, 26 de febrero de 2021).